Good morning. My name is Dave Merchant. I'm from the Federal Defenders of Montana, and I represent Keith Baroun. Actually, Mark Warner, my supervisor, handled the plea and the sentencing, and I'm doing the argument for him. There were two issues at sentencing. There was the restitution issue, and then there was the request for a variance under the vulnerable inmate kind of thing. I thank the government for conceding the restitution issue with the United States v. Kennedy, which came out in July of this year. But I think we actually need to look at both, because when the government argued at the sentencing hearing, they supplied a fair amount of materials for the restitution. They provided psychological reports and letters from an attorney, and those were used not only in the issue of restitution, but clearly the trial court looked at the letter from the attorney and the psychological report in determining whether or not it was going to grant the variance for the restitution. We obviously are governed by Kennedy. Kennedy didn't prohibit restitution, but he simply said you had to come up with evidence of attribution. Do we remand for further evidence to be taken, or do we simply reverse? Well, I think obviously the court can do either, but I don't think there's any more evidence that could be presented to the court. The government would have presented it then. I think it's clear that's not. Well, we don't know that. The government didn't know what the standards were then. Well, then obviously the court could reverse and send back for resentencing and let the government have a second shot at it. But the facts in the case are pretty clear. I think the record is pretty clear that the Vicki, the victim, didn't have any knowledge of Mr. Barone prior to. No, I'm sure that's right, but Kennedy suggested that if there was a way of allocating, and Kennedy even said if you knew, for example, how many people had viewed this pornography, then you could allocate if he was one thousandth of the people who viewed it, you could take her costs and take a thousandth of that. So I suppose you could get an expert that would testify about how many people they estimate would have viewed this pornography. That's absolutely what Kennedy says. There still needs to be some other. There needs to be evidence. Other evidence. That's correct. So the question is, do we remand? And the government may decide that it's not worth the effort at this point, but my question is, do we remand on Kennedy or do we just simply reverse? Well, obviously, my position is that you simply reverse. I think that Mr. Rostad's in a better position to answer the question of what evidence they have. If we turn to the next question, it's my understanding that you do not contest that the court considered every factor it needed to consider in imposing the sentence, and therefore, there's no procedural error, correct? Actually, I think Judge Siebel did a very good job in laying out the 3553 factors in this case. I don't think there is procedural error. If there's no procedural error, do we accord this sentence presumptive reasonability? Absolutely not. Why not? Well, the Ninth Circuit has been very clear that guideline sentences are not to be presumed presumptively reasonable. Well, we don't have any procedural problem with this, correct? Correct. At that point, all you're arguing, as I understand it, on abuse of discretion basis, that he came out differently than you would. Yes, but I don't think the simple and honest answer is yes. I think that we fundamentally disagree with the court and the sentencing. I think what Judge Smith means is not to – is that there's – the case law says there's no presumption with regard to one sentence versus another, but in general, the standard is reasonableness. Yes. So the question is – I mean, reasonableness review is necessarily deferential and necessarily has a – some kind of a – I don't know if you'd call it presumption, but it overrules the district court if it's unreasonable, which is pretty difficult. So what's unreasonable then? Well, I guess I have a kind of a multiple-fold argument to that. If this circuit is going to recognize that there is a variance factor for vulnerability in prison, then Keith Barone is the poster child for that. And the court was very clear when it's overruled. Well, there may be a factor, but that doesn't mean that any particular district judge in any particular case has to give controlling weight to it, right? I agree with you, except that the court didn't do that here. What the court said is, I've read – Mr. Werner submitted the treaties on assessing vulnerability, and Judge Siebel said, I've read it and I'm not convinced. Mr. Werner immediately said, it didn't convince me either. But here we have other factors. First and foremost, we have the fact that we have a psychological report. Well, he wasn't convinced that he was vulnerable, or he wasn't convinced that his vulnerability should – should affect his sentence. That's what I thought he was saying, because he said, essentially, you did a bad thing and you should have realized that this was going to happen. It's your problem. You know, he almost did say that. And I think that that's wrong. And I think the problem is that he said, I'm looking at the vulnerability of Vicki and comparing it with you. And that's not how you look at vulnerability in prison. You can't say, well, the victim's vulnerable, too.   But if you put a bunch of these together, what do you do? What do you do in a multi-factor test in which one is the crime and another one may be his vulnerability, what do you do except take a bunch of them together and say, you know, looking at this in light of that, I don't think this is a reason to – to have a different sentence? Well, what I believe the trial court did in this case said, well, you've gone to prison  You should have known better. I think that's – he's very clear about saying that. The problem with that is that Barone had gone to prison. He had gone for about 16 months. He had served that time basically in county jails. And he had gone for theft. Keith Barone is 125 pounds, 5'7", very infeminate looking. In fact, the PSR points out that his testicle didn't drop until he was 6 years old. So he has some manifestations. And the other thing that Mr. Warner presented to the court was, not only do I have this guy vulnerable, but we have him in two different county jails and holding facilities waiting to be federally sentenced, and he's being assaulted. And he's being assaulted for the crime that he is committed and being charged for at that point. Another thing I don't understand about this facture is you're not suggesting nonetheless that he not go to prison for 5 years. No, I'm not suggesting that at all. So he has 5 years to get attacked. Well, the reason, Mr. Warner didn't come up with the 120 months out of whole cloth. The 120 months is basically geared towards the Federal Bureau of Prisons. A 10-year sentence or less scores less on the designation score, on their security level score. So he would be eligible to go to a, not a camp, he would never go to a camp, but he would go to a low facility rather than a medium facility. And the reality is, if you look at the Bureau of Prisons statistics, the assaultive rate in mediums is higher than any other facility. And that's simply because you would think penitentiary's highs would be more assaultive, but that's not true because it's more controlled. Mediums in this country are gladiator schools. And you have a wispy little guy. So does that mean that little guys get favored treatment? Not at all. Prison's never going to be a favored treatment, Your Honor. He is going to go to a facility, and he's going to go to a facility hopefully where other people who have similar convictions and have similar circumstances and where the guard-to-inmate ratio is higher, and so that there is more for Mr. Braun. We are not suggesting he doesn't go to prison, but we are suggesting that he shouldn't be victimized. That's not part of what we're doing here. If we send people to prison knowing that they're going to be assaulted, that flies in the face of the American justice system. And it really is. And the obvious answer is you should control them to the degree that nobody's getting assaulted. But I understand it's not happening. I mean, there's obviously a lot of literature about that, too, and a lot of attempts to do something about it. But ---- I think, Mr. ---- the argument at the trial court was the evidence was presented that the Court should have looked at that more. And the other problem we have is ---- Well, again, on an abuse of discretion standard, should have looked at it more in this kind of situation, given Parrish, I'm having a tough time understanding how I can overrule. I mean, in Parrish, we said it wasn't an abuse of discretion to downwardly depart. But we certainly, for the same kind of a situation, we certainly didn't say everyone had to downwardly depart. Absolutely. And so, therefore, at that point, it seems, again, we're emphasizing the district court with the sentencing in front of it, with an abuse of discretion standard, is going to be given some latitude. But the Court looked at the vulnerability of the victim in this case and said, I'm concerned with the vulnerability of Vicki. He didn't address the ---- and his addressing of the vulnerability of Mr. Parrish. Well, he didn't really compare. He just simply said, well, Vicki was vulnerable, too. That was just a factual comment. And when you look at the statute, you know, you consider the seriousness of the offense. Vicki's vulnerability would have gone to that. You look at the need to protect the public. Vicki's vulnerability would go to that. And so it's hard for me to think that ---- I mean, he didn't say, I'm setting up a strict ratio or anything like that. It was just a statement he made, along with many other statements.  I will give you a minute or so. My time is up. Can I respond to that? Yes, please do. Okay. With all due respect, I don't read that here. What Judge Siebel said was, I am more concerned with the vulnerability of Vicki when I look at the vulnerability of you, and since you've gone to prison before, you should know better. That's entirely how he answers that question. Okay. Thank you. Thank you very much. Good morning, Your Honors. May it please the Court. I'm Carl Rostead. I'm an assistant U.S. attorney out of Great Falls, appearing here on behalf of the United States. I suffer from the same limitation as Mr. Merchant, as I was not the attorney that was present at sentencing. We have conceded the issue that the case must be remanded. Getting to your point, Your Honor, however, we agree that it has to be remanded for the opportunity to meet, if we can, the Kennedy standard, and show some proximate nexus between the damage done to the victim and the amount of restitution imposed. Do you have any idea today, of course you don't need to have it today, but do you have any idea today, if you choose to do that, how you might do that? Your Honor, the viewing of certain images by known victims, such as the one they were able to identify here, is often very closely watched nationally by NCMEC, the National Institute for Missing and Exploited Children, and that very well might give the attorney who handles this case the ability to say that NCMEC statistics show that this many people have viewed the Vicky, or at least known to have viewed the particular girl in this case. That may be a footing. It may not be a sound enough footing for the imposition of restitution, but I think that the United States would be entitled to at least give that as some consideration. Do you know what's happened to the Kennedy case in particular? Your Honor, pardon? What's happened in the Kennedy case? What's happened? The Kennedy case was about the same person. You know, I don't know, Your Honor, whether we did not contact the district to find out how that was done. There's no question it's an uphill challenge. But because of the Kennedy case, I'm certain that those people who are especially in the victim advocacy interest groups are making every effort they can to try to meet that standard in some way. Well, was Kennedy remanded? I can't remember whether it was remanded or just removed. It was remanded. It was. Okay. Fine. It was remanded. Fine. To give the Court the opportunity to now meet the, to at least make findings as to the proximate cause between the damages and the amount of restitution imposed. Okay. Going to the second issue, Judge Smith, I understood from my understanding of where you were going. I agree with Mr. Merchant that the law is fairly clear that a guideline sentence is not presumptively reasonable. That does not mean, however, that it's not deferential. You still give to the district court who went through the statutory factors and considered those factors deference because unless you can show that he didn't consider a factor. And in this case, it's clear that he did consider the vulnerability of the defendant in making his ruling. He just didn't give it the weight that Mr. Merchant and the defendant wished that he'd given it. If you look at the excerpt of record at 186 and 187 and then again at 189, on page 189 of the excerpt of record, he indicates that all child pornographers are somewhat vulnerable going to prison because he's cognizant of the environment in which they're going. The difference between the United States position, that of the defendant, and in support of Judge Siebel's ruling is a lesser sentence isn't the answer necessarily to a vulnerable person. He doesn't get a free pass because he's wispy and wafy and he's going to get beat up in prison. That is more of an administrative matter for the Bureau of Prisons to take care of. They should be cognizant of those issues, and I don't know that they aren't. I'm no expert in the Bureau of Prisons, but with the number of child pornography cases as this Court and the Tenth Circuit have seen, there's no question that there's a lot of them going to prison. I can't think that that's not being somewhat taken into consideration in terms of how they are housed and what populations they're placed in. Do you happen to know whether the representation that the length of the sentence here was determinative of the level of prison that he was being sent to? I'm sorry, Your Honor. Whether the length of the sentence was determinative of the level of prison that he was going to be sent to? I would defer to Mr. Merchant. I think he's given that thought, and I think that's true. There's all sorts of things that go into, from my experience, into where a person is sent, whether they're allowed to self-surrender is even one of the factors, or whether they're immediately incarcerated. It goes into their – the level of security of a place where they're placed. And certainly where there's a bed, and sometimes – I'm certain those factors are taken into consideration, but the length of the sentence is always a determining factor of where you're placed. Low violators are almost always short-termers. Medium and higher are higher. And then the other factors, such as their dangerousness, their criminal history, I don't think we need to lose sight of the fact that Mr. Brown came into this sentencing with a criminal history category of five. He wasn't your first-time offender that might have been more amenable to you. It's five. It was five, but it was a very weak five. It was one of the least offensive fives I've ever seen. That very well might be, Your Honor. But it still was a criminal history that could distinguish him from someone who, let's say, was a child pornographer, viewer, that never had any trouble with the law before. But you don't think there's anything wrong with the notion that district judges perhaps should and do take into account where the person's going to be incarcerated or under what circumstances? I think that's a dangerous path to go down, Your Honor. Why? Dangerous in terms of – it sounds like a great idea, but the trouble is, is that meshing that with the Bureau of Prisons' ability to administrate, you're talking separation of powers and all sorts of things that might do if you try to manipulate where they go. Well, I sit as a district judge also, and Judge Smith has been a district judge. But you can recommend – the sentencing judge can recommend certain things for the Bureau of Prisons. And the Bureau of Prisons usually, in my experience, tries to respect that. They don't always, but they try. Certainly. And in this case, Judge Siebel could have recommended that the Bureau of Prisons take into account the vulnerability of this victim. But I don't know that he didn't think that they wouldn't. Well, and even in setting the sentences, one of the factors we use are kind of sentences available, do we not? Exactly, Your Honor. And the kind of sentences and sentencing range established. That's correct. Those are factors, but not necessarily appealed here. Right. And you have considerations of fairness to other persons similarly situated. There's just a whole host of, as you gentlemen know, having done that job, a host of things that go into a determination of what the appropriate sentence would be. If there are no other questions, Your Honor, I thank you for your time. Thank you very much. You may have one minute in rebuttal if you please. Very quickly. Actually, on the 3553 factors, the rehabilitative services and education and vocational is taken into effect, plus the character and nature of the offender. But absolutely, the Federal Bureau of Prisons takes into account those lengths. They take in scoring the designation score. They look at your criminal history, and he would get dinged for that. They look at your age. They look at your education, if you have a GED or high school diploma. They don't read through the PSR. And I can proffer to this Court that I am one of the four people for the Federal Defender Services nationally who gives presentations on the Federal Bureau of Prisons, and I was employed by the Federal Bureau of Prisons in a legal capacity. So when I speak of this, I'm not speaking out of turn, but what I can tell you this is that the difference between 120 months and 165 months may just be four years as we look at a cold record. But to a person who is going to do that time, that is forever, and it is a change from a low security facility to a medium. Did you tell Judge Siebel that? I'm sorry? Did Judge Siebel know that? I didn't do the sentencing in this, and I constantly talk to Judge Siebel about prisons, and we do do those things. As far as the recommendations go, it's changed over the years. They no longer even have to respond to district judges, Your Honor. No, I know they don't have to. It's just been my experience, at least in Colorado, that they usually do. It's about 75 percent. But they do it for placement near families, vocational mostly, Unicor opportunities and the RDAP program and how that's housed. Thank you very much. Thank you. The case of United States v. Verroon is submitted. And we now have United States v. Shriver. Are you coming back again? I am back again. University of Michigan. This is Judge Siebel's family.
judges: Ebel, Berzon, Smith